UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  06-0059 (ESH) |
| | : | |
| v. | : | |
| | : | |
| AHMED K. HUNTER | : | |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE AND
STATEMENTS**

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion to Suppress Tangible Evidence. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

**FACTUAL BACKGROUND**

On February 8, 2006, at approximately 12:44 a.m. Officer Scott Brecht of the United States Park Police (USPP) conducted a traffic stop on the defendant's vehicle on Bowen Road at Ridge Road, SE, Washington, DC.  The defendant was driving a vehicle with no front tag, tint violations, and obstructive objects hanging from its rearview mirror.  The defendant was the registered owner and sole occupant of the vehicle.  Before approaching the driver-side of the car, Officer Brecht instructed the defendant to open the car windows because they were darkly tinted and impaired the officer's ability to see into the car.  Brecht knew the area to be a dangerous location.  In the previous five months alone, he had recovered three guns in that area, all during the course of routine traffic stops.  When the windows retracted, Officer Brecht immediately detected the strong odor of burnt marijuana emanating from the vehicle.

Brecht then ordered the defendant to exit the car and escorted him to the rear of the vehicle. According to Brecht, at the rear of the vehicle the defendant became "jumpy." Before Brecht could even address the defendant, the defendant made a spontaneous statement to the effect of, "how [or why] are you going to search my car." When Brecht asked whether the defendant was carrying any narcotics or weapons, the defendant replied, "No, No" in a loud voice. In Brecht's experience, volunteering concerns about the search of a vehicle is a strong indicator that a person is concealing something inside the vehicle. Thereafter, Brecht placed handcuffs on the defendant in order to detain him and conduct a <u>Terry</u> frisk.

After frisking the defendant's person, Brecht proceeded to the driver-side door which had remained ajar after the defendant got out of the vehicle. Shining his flashlight on the interior of the car, Officer Brecht discovered "green leafy material" which he recognized to be marijuana (and which was later determined to be marijuana) on the driver side floorboard, center seat cushion, and in the ashtray. Brecht did not touch or move any objects in order to view the marijuana. Officers proceeded to look underneath the driver's seat and there discovered a black semi-automatic Glock 22 .40 caliber handgun, containing one round of ammunition in the chamber and thirteen rounds in the magazine.

The defendant has been charged in a one-count Indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

## ARGUMENT

I. **THE SEARCH OF DEFENDANT'S CAR WAS JUSTIFIED ON AT LEAST THREE GROUNDS: OFFICERS HAD PROBABLE CAUSE TO SEARCH THE ENTIRE VEHICLE, REASONABLE SUSPICION TO CONDUCT A <u>TERRY</u>**

**FRISK, AND PROBABLE CAUSE TO CONDUCT A SEARCH INCIDENT TO LAWFUL ARREST.  THEREFORE THE EVIDENCE IS ADMISSIBLE.**

The search of the area below the front seat of the car was justified on three separate grounds.  As an initial matter, however, it is helpful to discuss the lawful seizure of the marijuana.

1.      **Seizure of the Marijuana**

Officer Brecht's observation of the marijuana that was located in or on the ashtray, floor, and seat of the defendant's car did not amount to a search within the meaning of the Fourth Amendment.  For purposes of Fourth Amendment protection, only invasions of actual subjective expectations of privacy that society recognizes as objectively reasonable are "searches."  See Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).  As such, items that are exposed to public view are not protected because there is no legitimate expectation of privacy in objects in plain view.  See id. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").  Here, marijuana was located in three locations in the car, and was observable upon shining a flashlight on the car's interior–which the Supreme Court has explained does not amount to a search.  See Texas v. Brown, 460 U.S. 730, 739-740 (1983) ("use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.").  An equally inquisitive and diligent passer-by could likewise have viewed the substance.  Therefore, the marijuana was exposed to public view and was not protected by the Fourth Amendment.

Even if the officer's conduct did amount to a search, however, the marijuana was nevertheless lawfully seized under the plain view doctrine.  As articulated by the Supreme Court,

"if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." Brown, 460 U.S. 730, 739.  In this case, there is no question that Officer Brecht observed the marijuana from a legal vantage point and recognized its incriminating character immediately.  First, he was justified in stopping the vehicle because it had no front plate and unlawfully tinted windows, and these violations gave probable cause to believe a traffic violation had occurred.  See United States v. Whren, 517 U.S. 806, 809-10 (1996) (Although a traffic stop is a "seizure" of "persons" under the Fourth Amendment and thus must not be unreasonable, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").  Second, because the car was lawfully stopped, Officer Brecht had the authority to order the defendant to exit the vehicle as a matter of course.  See Maryland v. Wilson, 519 U.S. 408, 410 (1997) (stating the rule of Pennsylvania v. Mimms, 434 U.S. 106 (1977), that "a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle."). Thereafter, while the car door remained open, the officer shined his flashlight on the floor of the car and recognized what he believed was marijuana.  Thus, Officer Brecht lawfully came to access the marijuana, and its incriminating nature was immediately apparent.  Therefore, the seizure was justified under the plain view doctrine.

**2**      **Probable Cause to Search the Vehicle**

As far back as Carroll v. United States, 267 U.S. 132 (1925), the Supreme Court "established an exception to the Fourth Amendment's warrant requirement, holding that a warrantless search of an automobile, stopped by police officers who had probable cause to believe the vehicle contained contraband, was not unreasonable within the meaning of the Fourth

Amendment." United States v. Turner, 119 F.3d 18, 19-20 (D.C. Cir. 1997). In this case, Officer Brecht had both justification for stopping the vehicle (explained above) and probable cause to believe the car contained contraband, as explained in this paragraph. To establish probable cause there must be "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Gates, 462 U.S. 213, 238 (1983). Here, three pieces of evidence taken together form a totality of circumstances sufficient to meet the requirements of probable cause. Officer Brecht smelled the distinct odor of marijuana emanating from the defendant's vehicle immediately after the defendant's rolled down his windows. Then, before officers asked any questions, the defendant volunteered strong concerns about a search of his car–concerns which in the officer's experience are good indications that contraband is concealed in the vehicle. Finally, Officer Brecht observed marijuana located in plain view on the floor, seat, and ashtray of the car. Taken together, these facts supported a common-sense belief that contraband, specifically additional marijuana, was in the car. Brecht was therefore justified in conducting a warrantless search of the car's interior.[1]

This position finds support in Turner, in which the Court of Appeals found probable cause to search the trunk of a car when officers smelled the odor of burnt marijuana emanating from the vehicle and found pieces of torn cigar paper and a bag containing a green weed substance near the driver. 119 F.3d at 20. There, the defendant did not even dispute that officers had probable cause to search the interior of the car. Id. Moreover, in rejecting the defendant's

---

[1] The scope of such search is "'defined by the object of the search and the places in which there is probable cause to believe that it may be found. If probable cause justifies the search of a lawfully stopped vehicle . . ., it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.'" Turner, 119 F.3d at 20 (citing United States v. Ross, 456 U.S. 798 (1982)).

argument that probable cause did not exist, the Court of Appeals cited United States v. Reed, 882 F.2d 147 (5th Cir. 1989), a Fifth Circuit case which provides that the distinct odor of burnt marijuana in itself provides probable cause to believe criminal activity is afoot and justifies search of the entire vehicle.  Turner, 119 F.3d at 21 (citing Reed, 882 F.2d at 149).

3.      *Terry* **Frisk**

The evidence is admissible because it was recovered during a lawful Terry Frisk.  "Under Terry, officers may also frisk persons that they stop, if they can articulate facts supporting a reasonable belief that 'criminal activity may be afoot and that the persons with whom [they are] dealing may be armed and presently dangerous." United States v. Smart, 98 F.3d 1379, 1384-85 (D.C. Cir. 1996).  In such circumstances, police may also search "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden." Michigan v. Long, 463 U.S. 1032, 1049 (1983).  The officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 27 (1968); see also Smart, 98 F.3d at 1384 ("Further, an officer may frisk such a suspect if the officer has reasonable, articulable suspicion that the suspect in question *may be* armed and dangerous."); see also United States v. Clark, 24 F.3d 299, 304 (D.C. Cir. 1994) ("[I]t now suffices, in appropriate circumstances, for the officer to be justified in believing that the individual *might* be armed and dangerous.").

Various factors in this case support a reasonable belief that the defendant was presently dangerous.  Although insufficient by itself, "'the fact that the stop occurred in a 'high crime area' is among the relevant contextual considerations in a Terry analysis,'" and the "importance of this

factor is further compounded by the lateness of the hour." <u>United States v. Brown</u>, 334 F.3d 1161, 1165 (D.C. Cir. 2003).  Here, Defendant Hunter was stopped on Bowen Road at Ridge Road, Southeast.  In the last five months alone, Officer Brecht has recovered three firearms in this area, all of which were recovered during routine traffic stops.  Thus, the reality is that stops in this area are dangerous.  This particular stop, according to <u>Brown</u>, was all the more dangerous because it occurred at 12:44 a.m.

     Furthermore, this circuit recognizes that officers can reasonably suspect persons who have engaged in drug transactions of possessing guns to protect themselves and their drugs. <u>Smart</u>, 98 F.3d at 1385.  Here, in addition to the location and time, Officer Brecht knew that the defendant had been involved in a narcotics transaction because the odor of burnt marijuana was coming from the defendant's car.  While it is true that not all drug users are drug dealers, certainly many are.  Furthermore, even non-dealing drug users must associate with drug dealers in order to obtain drugs, and many defendants in this Court explain their possession of a firearm as a precaution incident to buying drugs for personal use.  Thus while it is true that the odor of burnt marijuana could have indicted mere use, the Court of Appeals has stated the Fourth Amendment does not require officers to gamble their safety on the accuracy of assumptions. <u>United States v. Holmes</u>, 385 F.3d 786 (D.C. Cir. 2004).  Thus, the fact that defendant was involved with narcotics further supports a belief in his dangerousness.

     The defendant's darkly tinted windows further increased his danger to the officers. According to the Court of Appeals: "When, during already dangerous traffic stops, officers must approach vehicles whose occupants and interiors are blocked from view by tinted windows, the potential harm to which the officers are exposed increases exponentially, to the point, we believe,

of unconscionability. Indeed, we can conceive of almost nothing more dangerous to a law enforcement officer in the context of a traffic stop than approaching an automobile whose passenger compartment is entirely hidden from the officer's view by darkly tinted windows." Brown, 334 F.3d at 1169. Defendant Hunter's windows were darkly tinted, and therefore he could have been hiding or retrieving weapons before the officer approached. Therefore, under Brown, the defendant's windows posed an unconscionable risk of harm to Brecht and thus formed strong support of a reasonable fear.

Finally, reasonable fear is further supported by nervous behavior, Illinois v. Wardlow, 528 U.S. 119, 124 (2000), and by evidence that a person is concealing evidence of a more serious crime. See Wilson, 519 U.S. at 414. This is because the possibility of a violent encounter between an officer and a driver "stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop," and the motivation of the driver "to employ violence to prevent apprehension of such a crime." Id. Here, Defendant Hunter displayed nervous behavior, and, significantly, his nervous behavior indicated he was concealing something in his car. Before officers ever mentioned anything about looking inside the vehicle, the defendant became "jumpy" and volunteered concerns about the officers looking inside. In particular, he made a statement to the effect of, "how you going to look in my car." As his statement and escalating emotion were consistent with a fear of uncovered criminal activity, his behavior at the scene further supported a reasonable fear.

These facts and circumstances, taken together, support a reasonable fear that the defendant was armed and dangerous. Accordingly, officers were justified in searching, not only

8

the defendant's person, but also the passenger compartment of the automobile.

4.     **Search Incident to Lawful Arrest**

The search of the area underneath the front seat was also justified as a search incident to lawful arrest. New York v. Belton, 453 U.S. 454 (1981) held that police may search the passenger compartment of a vehicle when they make a valid arrest of its "occupant." See also United States v. Wesley, 293 F.3d 541, 546-47 (D.C. Cir. 2002) (upholding search of vehicle incident to arrest because police had probable cause to stop and arrest for violating court order). In this case, officers had probable cause to arrest the defendant for possession of marijuana because after smelling the odor of burnt marijuana emanating from the car, officers discovered a green leafy material which the officer recognized to be marijuana inside the car. Accordingly, under Belton, officers were justified in conducting a search of the passenger compartment of the defendant's vehicle.

The fact that the defendant was detained at the time of the search does not affect its propriety because although searches incident to a lawful arrest "are justified by the need 'to disarm and to discover evidence,'" they are "permissible regardless of whether, in the circumstances of a particular case, 'there was present one of the reasons' the exception." United States v. Wesley, 293 F.3d 541, 547 (D.C. Cir. 2002) (citing United States v. Robinson, 414 U.S. 218 (1973). Nor is it significant that the search may have proceeded formal arrest, because the search and arrest were close in time and officers had probable cause to arrest separate and apart from the recovery of the gun. See Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.");

See United States v. Taylor, 997 F.2d 1551 (D.C. Cir. 1993) (upholding search that preceded arrest as a search incident to lawful arrest).

WHEREFORE, for the reasons stated above, the defendant's Motion to Suppress Tangible Evidence and Statements should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN.
United States Attorney
Bar No. 451058

_____
BRIAN P. ROGERS
Special Assistant United States Attorney
Federal Major Crimes Section, Maryland Bar
555 4th Street, N.W., Room 4712
Washington, DC 20530
(202) 616-1478
